804 P.2d 417

STATE of New Mexico,
Plaintiff–Appellee,

v.

Hector S. HERNANDEZ,
Defendant–Appellant.

No. 11737.

Court of Appeals of New Mexico.

Dec. 6, 1990.

Hal Stratton, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Beverly Ohline, and Amme M. Hogan, Asst. Appellate Defenders, Santa Fe, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant Hector S. Hernandez appeals his conviction for burglary, larceny, and criminal damage to property. Defendant pled guilty to the charges, but reserved the right to appeal the sole issue before us: whether the search warrant authorizing a search of his residence should have been quashed and the evidence obtained suppressed. Defendant contends the affidavit presented in support of the request for a warrant was insufficient to establish probable cause to believe he committed a crime or that the items sought would be found at his residence. Finding no probable cause for the issuance of the search warrant, we reverse the trial court's denial of defendant's motions to quash the warrant and suppress the evidence.

■ A warrant will issue only upon a sworn written statement of the facts showing probable cause. SCRA 1986, 5–211(A). When an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate to independently pass judgment on the existence of probable cause. See State v. Cordova, 109 N.M. 211, 784 P.2d 30 (1989). In passing on the validity of the warrant, we consider only the sworn written statement brought to the magistrate's attention; in this case, the affidavit.

State v. Cervantes, 92 N.M. 643, 593 P.2d 478 (Ct.App.1979). The affidavit in support of the warrant states in full:

1. On 12/15/88 at approximately 1930, Gaylynn Ledbetter closed the establishment known as Jaynie's Beauty Salon and Nelle's Floral. At that time, the business was intact.

2. At approximately 2200 hours, witnesses observed Hector Hernandez and Matthew Hooten and another unidentified subject by Nelle's Floral.

3. At approximately 0716 hours on 12/16/88, the Artesia Police Department was advised that a burglary had taken place at Nelle's Floral and Jaynie's Beauty Salon.

4. Officers arrived at the scene and processed the crime scene. The investigation revealed blood located at the scene where the perpetrator had cut himself or herself.

5. Officers found several items that the suspect or suspects had taken from the burglary outside the premises. Items were dropped in several places. The trail of items led in the direction towards Hector Hernandez's residence at 802½ S. 2nd.

6. On 12/16/88, Officer Wright and Lt. Ramon Chavarria observed Hector Hernandez walking west on Washington. Officer Wright and Lt. Chavarria stopped Hector and talked to him. Officers observed a cut on Hector's hand with dried blood, and the cut appeared to be fresh.

7. On 12/16/88, Officer Wright contacted ADA Terry Haake and he advised that probable cause existed to search the premises at 802½ S. 2nd and Hector Hernandez.

■ The application for the search warrant depends in part on hearsay provided by an unnamed source. The affidavit recites that "witnesses observed" defendant and two others by the burglarized shop sometime during the twelve-hour period of time within which the break-in occurred. That this information is hearsay does not eliminate its role in establishing

probable cause. *See State v. Deltenre,* 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied,* 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967). However, to the extent that probable cause is based on hearsay, there must be "a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished." R. 5–211(E); SCRA 1986, 6–208(F) (Repl.1990); 7–208(E) (Repl.1990); 8–207(F) (Repl.1990). These requirements are based on the "veracity" and "basis of knowledge" tests of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). *See State v. Cordova.* We continue to use this two-prong test in evaluating whether hearsay can be utilized in establishing probable cause to support a warrant. *See id.*

The state characterizes the "witnesses" as citizen-informers and would have us treat their hearsay differently from that of a confidential police informer. The state contends that the credibility prong of the two-pronged test should not apply to information supplied by citizen-informers. It urges us to hold that citizen-informers are presumptively reliable. It argues that we should relax the requirement that the source of hearsay be reliable in situations involving citizen-informers as opposed to professional informants from the criminal milieu.

The state relies on the rule that where the source of information included in an affidavit is a citizen-informer who is a victim of or an eyewitness to a crime, reliability is presumed and need not be further established. *See, e.g., State v. Montigue,* 288 Or. 359, 605 P.2d 656, *cert. denied,* 449 U.S. 846, 101 S.Ct. 131, 66 L.Ed.2d 56 (1980); *Allison v. State,* 62 Wis.2d 14, 214 N.W.2d 437, *cert. denied,* 419 U.S. 1071, 95 S.Ct. 659, 42 L.Ed.2d 667 (1974).

■ In the present case, we cannot determine whether the witnesses were citizen-informers. " 'A "citizen-informant" is a citizen who purports to be the victim of or to have been the witness of a crime who is motivated by good citizenship and acts openly in aid of law enforcement.' " *People v. Smith,* 17 Cal.3d 845, 850, 132 Cal. Rptr. 397, 400, 553 P.2d 557, 560 (1976) (quoting *People v. Schulle,* 51 Cal.App.3d 809, 814–15, 124 Cal.Rptr. 585, 588 (1975)). In order to apply the citizen-informer rule, the affidavit must affirmatively set forth circumstances which would allow a neutral magistrate to determine the informant's status as a citizen-informer. *See id.* Such circumstances were not set forth in the affidavit in this case. We cannot determine the status of the informers, much less the reliability of the statement. Were the witnesses at the scene when the police responded to the call? Did an anonymous person call the police after hearing about the break-in? Did the police question their usual informants? Did other citizens or informants tell the police that there were witnesses who observed defendant the previous night?

The state argues that a common-sense reading of the affidavit supports a reasonable inference that the witnesses referred to were discovered during the course of the investigation and were not professional informants supplying information. It relies on *United States v. Melvin,* 596 F.2d 492 (1st Cir.1979). In *Melvin,* the court found that an unknown male who related information to a police officer at the scene of the crime was a bystander, citizen witness. The court reasoned that the nature of the information and the "on the scene" circumstance of the report suggested that he was relating his personal observation as a bystander witness. In the instant case, there is no indication of the circumstances in which the reported information was communicated to the police and thus, unlike *Melvin,* except for the nature of the witnesses' report, there was nothing by which a neutral and detached magistrate could infer the status of the witnesses.

A magistrate cannot determine whether the witnesses were unknown and anonymous, or whether they were known to the police but wished to remain anonymous. The affidavit is also silent on the circumstances in which the observation of defendant took place and the circumstances in

which the information was communicated to the police. In *Melvin,* the court noted that had the statement of the unidentified citizen not been corroborated by an officer who observed the car earlier that morning, the fact that "the 'unknown male' was not identified and that the affidavit did not state the circumstances of his observation might be grounds for discounting the statement had it stood alone." *Id.* at 497.

Here there is no corroboration of the statement by the unidentified "witnesses." Because no circumstances whatsoever are disclosed regarding the witnesses' identities, observation or communication of their observation to the police, it is virtually impossible to find the hearsay reliable.

As there is no substantial basis for believing the hearsay to be credible, it cannot be considered along with the other information in the affidavit to determine whether there was probable cause to search defendant's residence. R. 5–211(E); *see also Spinelli v. United States* (aggregate of discrete bits of information, each of which is defective, does not add up to the establishment of probable cause); *State v. Brown,* 96 N.M. 10, 626 P.2d 1312 (Ct.App. 1981). The warrant may nevertheless stand if the remaining allegations demonstrate probable cause. *United States v. Lucarz,* 430 F.2d 1051 (9th Cir.1970).

▪ Reading the affidavit as a whole, absent the declaration regarding the witnesses' observation, there remains the discovery of blood at the scene, the cut on defendant's hand, and the statement that a trail of several dropped items led in the direction of defendant's residence. We note that "the trail of items" is not described with any particularity, except that several items were found outside the burglarized premises. The fact that the police found items dropped outside the premises is insufficient to support the affiant's belief that the trail of items led in the direction of defendant's residence. The affidavit gives no indication as to how many residences were "in the direction towards [defendant's] residence." If, for example, the items were simply found across the street from the burglarized premises, the fact that defendant's residence was also in that direction would hardly be probative. We find the discovery of blood at the scene of the crime, the fact that defendant had a cut on his hand and the statement regarding the dropped items insufficient to support a finding of probable cause to search defendant's home.

We reverse the trial court's denial of defendant's motions and remand for further proceedings consistent with the agreement reached between the parties and the trial court.

IT IS SO ORDERED.

ALARID, C.J., and HARTZ, J., concur.