879 P.2d 787

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**James LOVATO, Defendant–Appellant.**

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Mary Esther LOVATO, Defendant–
Appellant.**

Nos. 14829, 14716.

Court of Appeals of New Mexico.

March 11, 1994.

# 156

Tom Udall, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender and Bruce Rogoff, Asst. Appellate Defender, Santa Fe, for defendant-appellant James Lovato.

D. Scott Riedel, Lamberton & Riedel, Santa Fe, for defendant-appellant Mary Esther Lovato.

## OPINION

FLORES, Judge.

In these consolidated appeals, Defendant Mary Esther Lovato (Mary Esther) appeals from her conviction for possession of heroin and Defendant James Lovato (James) appeals from his convictions for trafficking heroin, conspiracy to commit trafficking, and possession of drug paraphernalia. Both Mary Esther and James raise the following issues on appeal: (1) whether the trial court erred in denying their motion to suppress the evidence obtained as a result of a search warrant which was stale; and (2) alternatively, whether the search warrant was facially invalid because it did not support probable cause. In addition, James also raises the following issues on appeal: (1) whether the evidence is insufficient to support his convictions for trafficking, conspiracy to commit trafficking, and possession of drug paraphernalia; and (2) whether there was ineffective assistance of counsel on the part of his trial attorney for failing to object to a surprise witness.

We reverse the trial court's denial of the motion to suppress on the basis that the information contained in the affidavit was stale as of the date of issuance of the search warrant and thus remand for a new trial.

## FACTS

On July 23, 1992, Mary Esther and James, mother and son, registered with the Loma Verde Motel and, after a room change, occupied Room 18. The warrant to search Defendants' motel room was issued on August 6, 1992 and executed on August 11, 1992. The affidavit in support of the warrant describes the appearance of the outside of the motel room with great specificity.[1] In addition, the affidavit contains information obtained within seventy-two hours of issuance of the search warrant which describes a controlled purchase of heroin made by the confidential informant and the same informant's opinion that "a purchase of heroin could be made" from the address at which the same informant ultimately made a controlled buy.[2]

---

**1.** The premises to be searched is a multi unit motel complex. This motel unit complex is "Loma Verde" and is located at 7503 Central N.E. The complex is two seperate [sic] buildings and has several trailors [sic] in the lot. The buildings are all white stucco with a brown trim. The roof is flat. At the entrance there is a red sign with yellow lettering that reads "Loma Verde Motel." Room # 18 is in the east building and is the southern most room of the building. The door to # 18 faces west and is blue in color. There is a window just north of the door. The # 18 is attached to the wall just north of the door near the top of the door. The # 18 is the same color as the door. The numbers 7503 are black in color and are located on the southside of the office. Also, any person(s) and[/]or vehicle(s) at the premises which can be shown to be involved in drug dealing[,] purchasing or selling and any person(s) and or vehicle(s) which arrive at the residence during the execution of the search warrant which can be shown to be involved in drug dealing, purchasing or selling. Affiant will be present during the execution of the search warrant.

**2.** Within the last 72 hours affiant was contacted by a confidential informant who advised that heroin was being sold out of the above described motel room.... The confidential informant advised a purchase of heroin could be made from 7503 Central Ave. N.E. # 18. The confidential informant then showed affiant the location where a controlled purchase of heroin could be made. The confidential informant was searched and found not to have any controlled substances, contraband, or U.S. Currency of [sic] its person. The confidential informant was kept under constant surveillance as it proceeded to 7503 Central Ave. N.E. # 18. The confidential informant remained at 7503 Central Ave. N.E. # 18 for a short time and was observed to exit the motel room. The confidential informant was kept under constant surveillance as it departed 7503 Central Ave. N.E. # 18. The confidential informant then returned to a prearranged location where it turned over to affiant an amount of suspected heroin. The CI was then searched and no controlled substances, contraband, or U.S. Currency was [sic] found on its person. The suspected heroin was taken to the S.E. Substation by affiant in the presence of other members of the S.E. Narcotics Unit. The substance was field tested with a Scotts Reagent Test kit and the

*STALENESS DISCUSSION*

█ Defendants assert that the information in the affidavit, regarding the confidential informant's belief that a purchase of heroin could be made from motel room 18 and the description of the controlled buy that the same confidential informant eventually made at that room is stale because it fails to establish probable cause that heroin would be found there at the time of issuance, seventy-two hours later. The significance of the time factor depends on whether there was an isolated transaction or a continuing series of events. *State v. Garcia,* 90 N.M. 577, 578, 566 P.2d 426, 427 (Ct.App.), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977). Regarding the time factor, the *Garcia* Court also stated the following:

> "If there is a reasonable basis in the affidavit for the conclusion that the criminal activity alleged by the informer is of a continuing, ongoing nature, the passage of time between the informer's last observations of that activity and the issuance of the warrant is less significant than when no such showing is made in the affidavit."

*Id.,* 90 N.M. at 579, 566 P.2d at 428 (quoting *State v. Austria,* 55 Haw. 565, 524 P.2d 290, 294 (1974)).

Defendants further contend that other factors render the search warrant stale, including the affidavit's lack of: (1) any details regarding the amount of illegal drugs the confidential informant observed at the premises or the amount of heroin the confidential informant purchased at the controlled buy; (2) any details regarding who possessed the drugs; (3) any details specifying who resided at the premises to be searched; (4) any details identifying the suspects; or (5) any details connecting the suspects to the premises to be searched. *See State v. Kittredge,* 36 Or.App. 603, 585 P.2d 423, 424–25 (Ct.1978) (Court found the affidavit insufficient to establish probable cause where the only operative facts came from confidential informant who was on premises to be searched within the past ninety-six hours and where the facts did not indicate likelihood that the marijuana might still be found there because such relevant facts as the following were missing from

heroin tested positive. The heroin was then

the affidavit: (1) the amount of marijuana seen at the premises; (2) who possessed the marijuana; and (3) the prior history of the suspects.); *State v. Scheidemann,* 252 Or. 70, 448 P.2d 358, 360 (1968); *State v. Scheer,* 49 Or.App. 937, 620 P.2d 973, 974–75 (Ct.1980); *State v. Black,* 36 Or.App. 613, 585 P.2d 44, 46 (Ct.1978); *see also State v. Powell,* 96 N.M. 569, 570–71, 632 P.2d 1207, 1208–09 (Ct.App.1981) (This Court held search warrant stale even where the affidavit identified the defendants by name, contained information that the defendants associated with known drug dealers, but where the information related to criminal drug activity was six months old.); *cf. Garcia,* 90 N.M. at 578–79, 566 P.2d at 427–28. (This Court found sufficient indicia of ongoing activity had been set forth in the affidavit even though the last alleged drug purchase occurred a month prior to issuance of the search warrant where (1) three separate informants supplied information against the defendant; (2) numerous occasions where the defendant sold heroin were reported; and (3) there was information in the affidavit alleging the defendant was a heroin user.).

The State relies on *Garcia* for the proposition that there were a sufficient indicia of ongoing, continuous criminal activity at the motel room to support issuance of the search warrant. *See Garcia,* 90 N.M. at 579, 566 P.2d at 428. However, the State acknowledges that in the instant case the affidavit fails to contain specific details regarding the identity of the suspects, the amount of heroin observed at the premises to be searched, the amount of heroin the confidential informant purchased at the controlled buy, or the length of time the suspects were expected to remain at the motel room. To explain away this dearth of information, the State relies on the proposition that elaborate specificity is not a technical requirement for an affidavit for a search warrant. *State v. Wisdom,* 110 N.M. 772, 777, 800 P.2d 206, 211 (Ct.App.), *cert. denied,* 110 N.M. 749, 799 P.2d 1121 (1990), *overruled on other grounds by State v. Barker,* 114 N.M. 589, 594, 844 P.2d 839, 844 (Ct.App.1992). We are not persuaded by

tagged into evidence.

the State's arguments under the facts of this case.

■ "When an application for a search warrant is based on an affidavit, the affidavit must contain sufficient facts to enable the issuing magistrate to independently pass judgment on the existence of probable cause." *See State v. Hernandez*, 111 N.M. 226, 227, 804 P.2d 417, 418 (Ct.App.1990). The standard of review on appeal is whether, given a common sense reading, the affidavit supports the issuance of the search warrant. *Wisdom*, 110 N.M. at 774, 800 P.2d at 208.

Probable cause to authorize the issuance of a search warrant requires a factual showing that "an accused, at the time of the application for warrant, is in possession of illegal property or the fruits of a crime or that evidence relating to the commission of a crime exists on the premises sought to be searched." *State v. Donaldson*, 100 N.M. 111, 115, 666 P.2d 1258, 1262 (Ct.App.), *cert. denied*, 100 N.M. 53, 665 P.2d 809 (1983). The degree of proof necessary to justify a search warrant supported by probable cause is "more than a suspicion or possibility but less than a certainty of proof." *Id.*, 100 N.M. at 116, 666 P.2d at 1263.

■ If the search warrant pertains to a residence, the affiant must have personal knowledge that the suspect resides at the home. *See State v. Sansom*, 112 N.M. 679, 682, 818 P.2d 880, 883 (Ct.App.1991). In the event that the affiant does not have personal knowledge that the suspect resides at the premises, the affidavit must establish or permit a reasonable inference that the suspect resides at the premises in order to establish probable cause sufficient to issue a warrant at that address. *Id.* For Fourth Amendment purposes, a motel room is the equivalent of a dwelling. *State v. Copeland*, 105 N.M. 27, 31, 727 P.2d 1342, 1346 (Ct.App.), *cert. denied*, 104 N.M. 702, 726 P.2d 856 (1986). As the registered occupants of the motel room which was searched, Mary Esther and James were therefore entitled to the same rights as if their private residence had been searched rather than the motel room. *See State v. Esguerra*, 113 N.M. 310, 314, 825 P.2d 243, 247 (Ct.App.1991).

■ Although seventy-two hours is not necessarily an extensive amount of time between a reliable informant's observation and issuance of a search warrant, under the facts and circumstances of the instant case, the affidavit fails to support a conclusion that criminal activity at the motel room was of an ongoing, continuous nature under *Garcia. Id.* The affidavit also fails to permit a reasonable inference, under *Sansom*, 112 N.M. at 682, 818 P.2d at 883, that Mary Esther and James resided at the premises which were searched. The affidavit in question contains no information regarding the quantity of heroin involved in the controlled buy, whether any additional heroin or other illegal drugs were observed in the motel room at the time of the controlled buy or at any other time, or whether any drug paraphernalia was ever observed in the motel room. Further, the affidavit contains no information which describes the number, names, sex, physical appearance, or prior history of the individuals who were allegedly dealing drugs in the motel room. Lastly, the affidavit contains no information regarding the suspects' status as regards the motel room, whether they were visitors, occupants of the room, or employees of the motel. In point of fact, Mary Esther and James were registered at the motel as the occupants of the motel room searched. In other words, the affidavit merely provides a detailed description of the outside of the motel room and a description of a controlled buy. However, neither description contained in the search warrant provides any information which links Defendants to either the room to be searched or the controlled buy.

For the reasons stated above, we hold that the affidavit was insufficient to justify issuance of the search warrant because the information was stale at time of issuance of the search warrant.

## REMAINING ISSUES

Because we remand for a new trial, we do not reach James' issue of ineffective assistance of counsel since it is not likely to arise on retrial. We do, however, address his issue as to the sufficiency of the evidence, because, if the evidence was insufficient to sustain the conviction, we would be compelled to dismiss with prejudice. As we reit-

erated recently in *State v. O'Kelley,* 118 N.M. 52, 57, 878 P.2d 1001, 1006 (Ct.App.1994), "[t]he correct rule is that when determining whether retrial is barred because there was insufficient evidence of guilt at the trial from which the appeal is taken, the appellate court considers all the evidence admitted, even that evidence which it holds was admitted improperly." *See also State v. Post,* 109 N.M. 177, 181, 783 P.2d 487, 491 (Ct.App.1989). Consequently, the evidence seized must be considered to determine whether there was sufficient evidence to support James' convictions. We hold there was.

*CONCLUSION*

We reverse the trial court's denial of Defendants' motion to suppress the evidence obtained from the illegal search and remand for a new trial excluding that evidence.

IT IS SO ORDERED.

ALARID, J., concurs.

BIVINS, J. (specially concurs and files opinion.)

BIVINS, Judge (specially concurring).

I concur in the result and much of the discussion dealing with the staleness issue. I write separately to make clear my understanding of the basis for reversal.

The only operative facts recited in the affidavit supporting issuance of the warrant are (1) the detailed description of the premises to be searched; (2) the fact that the affiant was contacted within 72 hours before obtaining the search warrant by a confidential informant (CI) who stated "that heroin was being sold out of the [premises]" and that "a purchase of heroin could be made from [the premises]," a location which the CI then showed to the affiant; and (3) that a controlled purchase was arranged and made through the CI. What is not known are the following: (1) how much heroin the CI observed when he made the controlled purchase or how much heroin the CI turned over to the affiant after that purchase; (2) whether the CI observed paraphernalia or other indicia of a continuing, ongoing drug operation as opposed to an isolated, one-time sale; and (3) any identification of the occupants of

the premises, either by name or description, which would enable the issuing magistrate to determine that the contraband observed within a 72–hour time period earlier would still be on the premises at the time of issuance of the search warrant. I believe that, given the transient nature of a motel, as opposed to a residence, Defendants' position is correct that the facts set forth in the affidavit were stale.

"Staleness is not an issue unless time passage makes it doubtful the object sought in the warrant will still be in the place where it was observed." *State v. Roebuck,* 530 So.2d 1242, 1251 (La.Ct.App.), *writs denied,* 531 So.2d 764 (La.1988). Here, the affidavit states that the CI contacted the affiant "[w]ithin the last 72 hours." Although the time period actually might have been shorter and thus may have been a euphemism to protect the CI, the issuing magistrate could not assume that the facts on which he relied occurred in less than 72 hours. The lapse of time, however, is not in and of itself fatal. *See State v. Garcia,* 90 N.M. 577, 578, 566 P.2d 426, 427 (Ct.App.) (lapse of one month did not require finding of staleness where informants provided information showing ongoing activities as well as identity of defendant), *cert. denied,* 90 N.M. 636, 567 P.2d 485 (1977). Instead, the problem is that facts from which the issuing magistrate could find that there was ongoing, continuous drug activity in the motel room searched are missing. Additionally, the information in the affidavit did not provide facts from which the magistrate could have ascertained that the persons occupying the room when the controlled buy was made were the same persons occupying the room when the warrant was issued.

Unlike a residence, occupied by the owner or a tenant, motel and hotel rooms present a special problem. It is common knowledge that motel and hotel rooms change hands frequently. Understandably, the affiant here, according to his later testimony, did not want to check the identity of the occupants with the motel manager for fear that the manager might be involved with the drug activity and would warn the occupants. Notwithstanding, the affiant might have taken

simple steps to ascertain whether or not the occupants of the targeted room had changed after the time the CI made the controlled purchase. This could have been done perhaps by obtaining identification from the CI of the occupants at the time of the controlled buy and ascertaining through surveillance that the same occupants were there at the time of the issuance and execution of the warrant. *See Tart v. Virginia,* 437 S.E.2d 219, 221 (Va.Ct.App.1993) (affidavit describing occupants of motel room stating that occupants were associated in ongoing criminal activity and a CI had been in the rooms within the last 72 hours and had seen drugs was sufficient to justify magistrate's determination of probable cause). Making certain the occupation of the room had not changed hands is important to the determination of a continuing, ongoing operation in the premises to be searched. It is possible that the motel that was the subject of the search warrant here was actually an establishment that tended to have guests that used the motel as a temporary apartment for an extended period of time and thus was not transient in nature. If that were the case then that was a fact that should have been included in the affidavit because in that situation it would have been less likely that the motel guest would have checked out, and consequently this information might have helped keep the affidavit from becoming stale.

While the location to be searched, a motel room, is merely one factor to be considered in light of the totality of the circumstances, *see id.* at 222, that factor, coupled with the lack of any information as to the quantity of heroin observed or any other factors suggesting continuing, ongoing drug activity, compels a holding that the information contained in the affidavit was stale and would not have supported probable cause to issue the warrant. For those reasons I join the majority in reversing.